IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| CINEBARRE, LLC, | § |
| Plaintiff, | § |
| v. | § CIVIL ACTION NO. 3:13-cv-00618 |
| MOVIE GRILL CONCEPTS XV, LLC; MOVIE GRILL CONCEPTS TRADEMARK HOLDINGS, LLC, | § |
| Defendants. | § |

## ORDER

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 22), Plaintiff's Response (Doc. No. 24), and Defendant's Reply (Doc. No. 26). For the reasons stated herein, that motion is **DENIED**.

## I. BACKGROUND

Plaintiff Cinebarre, LLC operates movie theaters across the United States. These theaters are based upon a "novel concept" in that they offer spacious seating, a variety of food prepared on site, and an eating surface positioned in front of the seating so that patrons may consume food and drink while viewing a movie. (*See* Amended Complaint (hereinafter "Complaint"), Doc. No. 15 at 3). The Complaint alleges that, since 2007, Plaintiff has marketed its movie theaters under the trademark "EAT. DRINK. WATCH MOVIES.", which was registered as U.S. Trademark No. 3,349,828 on December 4, 2007. (*See* Exh. A to Compl., Doc. No. 15-1). It further alleges that the mark is widely recognized within the business community as the brand identifier for Plaintiff's movie theaters, and that consumers have come to recognize the mark as being associated with Plaintiff.

1

As alleged in the Complaint, Defendants also operate movie theaters—which also serve food and drink to patrons while they watch movies—with one such location operating in Charlotte. Defendants use similar marks to brand their services, namely "SMG: EAT DRINK MOVIES" and "EAT DRINK MOVIES." (Compl. at 5). Plaintiff alleges that Defendants began using these marks with full knowledge of Cinebarre's mark, and that Defendants' owner, Brian Schultz, directly modeled Defendants' movie theaters after Cinebarre's concept. (*Id.*) More specifically, the Complaint alleges that in 2002, Mr. Schultz contacted Plaintiff's predecessor-in-interest expressing interest in operating a franchise. (*Id.*) Plaintiff's predecessor-in-interest ended those discussions when it learned that Mr. Schultz had attempted to bribe one of its employees to allow him access to the kitchen so that he could take pictures; it concluded that the franchise overture was merely a ruse to learn more about its business model. (*Id.*)

Finally, the Complaint alleges that Defendants selected these "virtually identical" marks to cause confusion, mistake, and deception as to the source, origin, and authenticity of Defendants' services and goods. (Compl. at 11). It also alleges that, when Defendants attempted to register the "EAT DRINK MOVIES" mark, the U.S. Patent and Trademark Office ("USPTO") initially refused registration on the basis of likelihood of confusion with Plaintiff's trademark. (Compl. at 6). Defendants began using these marks after March 2009.

Plaintiff's Amended Complaint, filed June 5, 2014, alleges claims for (1) federal trademark infringement; (2) common law trademark infringement; (3) North Carolina Unfair and Deceptive Trade Practices; (4) common law unfair competition; (5) federal unfair competition/false advertising; (6) cancellation of U.S. Trademark Registration No. 4,336,460 (Defendants' "EAT DRINK MOVIES" mark); and (7) cancellation of U.S. Trademark Registration No. 4,204,415 (Defendants' "SMG: EAT DRINK MOVIES" mark).

## II. LEGAL STANDARD

When faced with a Rule 12(b)(6) motion to dismiss, courts are instructed to "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). After "assum[ing] the veracity" of these factual allegations, the court is to "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a "complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

## III. DISCUSSION

### A. Trademark Infringement

The argument central to Defendants' motion to dismiss is that the Complaint fails to "allege any specific facts explaining how a consumer could plausibly be confused as to the source or sponsorship of Cinebarre's and Studio Movie Grill's movie theaters . . . ." (Doc. No. 22-1 at 7). The elements of a claim for trademark infringement in the Fourth Circuit are as follows:

> To prove trademark infringement, [the plaintiff] must show (1) that it owns a valid and protectable mark; (2) that [the defendant] uses a "re-production, counterfeit, copy, or colorable imitation" of that mark in commerce and without [the plaintiff's] consent; and (3) that [the defendant's] use is likely to cause confusion.

3

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 259 (4th Cir. 2007) (quoting 15 U.S.C. § 1114(1)(a)). While Defendants expressly contest the first element,[1] their arguments clearly focus on the third.[2]

As to likelihood of confusion, the Fourth Circuit has identified "several nonexclusive factors to consider" when making such a determination:

> (1) The strength or distinctiveness of the plaintiff's mark; (2) the similarity of the two marks; (3) the similarity of the goods or services the marks identify; (4) the similarity of the facilities the two parties use in their businesses; (5) the similarity of the advertising used by the two parties; (6) the defendant's intent; and (7) actual confusion.

*Louis Vuitton*, 507 F.3d at 259 (citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984)). These factors "are not always weighted equally, and not all factors are relevant in every case." *Id.* Importantly, the Court of Appeals has noted that "the likelihood of consumer confusion is an 'inherently factual' issue that depends on the unique facts and circumstances of each case." *Anheuser-Busch, Inc. v. L&L Wings, Inc.*, 962 F.2d 316 (4th Cir. 1992) (citing *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1365 n.5 (9th Cir. 1985)).

Rather than engage in an exhaustive review of the Complaint, the Court will simply note that the Complaint alleges sufficient facts to demonstrate a plausible likelihood of confusion, and to state a claim for trademark infringement. While Defendants argue that the common nature of the words comprising Cinebarre's trademark renders the mark weak, Plaintiff notes that, with a certificate of registration from the USPTO, "the registrant obtains prima facie evidence that its

---

[1] Plaintiff argues not only that its "EAT. DRINK. WATCH MOVIES." trademark is valid and protectable, but that it is "incontestable." *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) ("Incontestability is 'conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the mark in commerce.'" (quoting 15 U.S.C. § 1115(b))).

[2] Plaintiff argues that, as to the second element, the Complaint "plainly satisfies the use-in-commerce and absence-of-consent criteria, and Defendants do not, and cannot, allege otherwise." (Doc. No. 24 at 6). Again, Defendants' arguments in favor of dismissal do not appear to focus on this element.

4

mark is not generic in the eyes of the relevant public, *see* 15 U.S.C. § 1064(3), and that its mark is not "merely" descriptive, but at a minimum is descriptive *and* has obtained secondary meaning, *see* 15 U.S.C. § 1052(e))." *America Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001).

Otherwise, the Complaint alleges that the marks are strikingly similar in that they use nearly the same sequence of words in substantially the same manner. The parties are engaged in basically the exact same service—operating movie theaters where patrons and eat and drink while watching movies—using the same basic type of facility. And while the Complaint does not appear to assert instances of actual confusion, it does allege facts intimating an intent to cause confusion on the part Mr. Shultz, who allegedly modeled Defendants' theaters directly after Plaintiff's. Defendants vehemently deny these allegations, but they are taken as true at the pleading stage.

Defendants argue at length that its marks could not possibly cause confusion as to the source or sponsorship of the movie theaters, because the marks either expressly include, or are nearly always paired with "Studio Movie Grill," or its abbreviation "SMG". But the inclusion of one's business name does not automatically negate any plausible confusion on the part of the average consumer, who may only remember or be familiar with the combination and sequence of words in Plaintiff's "EAT. DRINK. WATCH MOVIES." mark. Otherwise, the exhibits to Plaintiff's Complaint demonstrate that SMG does not always, as a matter of course, pair its name with the phrase "EAT DRINK MOVIES." (*See* Doc. No. 15-5). The extent to which SMG includes its name with these marks, and the extent to which Defendants' use of these marks causes confusion anyway, are topics the parties may explore during discovery. For these reasons, the Court finds that the Complaint alleges sufficient facts to demonstrate a plausible likelihood of confusion as to the source or sponsorship of Defendants' movie theaters, and that it states a claim for trademark infringement.

5

B. **Common Law Trademark Infringement, Common Law Unfair Competition, Federal Unfair Completion/False Advertising**

Defendants note that plausible likelihood of confusion is also an element of common law trademark infringement, common law unfair competition, and federal unfair competition/false advertising, and argue that those claims should be dismissed for failing to satisfy this element. The Court having found that the complaint does allege a plausible likelihood of confusion, Defendants' motion as to these counts will also be denied.

C. **North Carolina Unfair and Deceptive Trade Practices**

Defendants also move to dismiss Plaintiff's claim under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), which prohibits "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce . . . ." N.C. Gen. Stat. § 75-1.1. To establish such a claim, a Plaintiff must show: (1) the defendant committed an unfair or deceptive act or practice; (2) the act in question was in or affected commerce; and (3) the act proximately caused injury to the plaintiff. *Bob Timberlake Collection, Inc. v. Edwards*, 626 S.E.2d 315, 322 (N.C. App. 2006). "An act or practice is unfair if it is 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" *Id.* (citing *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981)). "An act or practice is deceptive if it 'has the capacity or tendency to deceive.'" *Id.*

Having carefully reviewed the complaint, the Court finds that it states a plausible claim under the North Carolina UDTPA. Plaintiff alleges that Defendants are copying its mark with an intent to cause confusion among consumers, and that as a result of these practices, it has incurred damages, embarrassment, and injury to reputation. Defendants' motion as to this claim will be denied as well.

### D. Cancellation of U.S. Trademarks

Finally, Defendants move to dismiss Plaintiff's claims for the cancellation of their marks. Plaintiff asserts these claims based on (1) priority use and (2) fraud on the USPTO. Indeed, the Complaint demonstrates that Plaintiff filed its trademark application on November 21, 2005, and alleges that it has used the mark at least since June 2007. Defendants, on the other hand, did not apply for their marks until March 2011 and May 2012, and the Complaint alleges that they did not begin using these marks until March 2009. Thus, the Complaint alleges facts sufficient to demonstrate prior use. *See Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 268 (4th Cir. 2003) ("The first user, then, to appropriate and use a particular mark—the 'senior' user— generally has priority to use the mark to the exclusion of any subsequent—or junior—users."); *see also* 15 U.S.C. § 1057.

The Complaint further alleges that Defendants falsely represented to the USPTO that no corporation "has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely . . . to cause confusion, or to cause mistake, or to be deceived." (Compl. ¶¶ 84, 95). Defendants appear to challenge these allegations only on the grounds that Plaintiff has failed to establish a plausible likelihood of confusion. (*See* Doc. No. 22-1 at 27). Because the Court has already concluded that Plaintiff has met this burden, Defendants' motion as to these counts will be denied.

### IV. ORDER

**THEREFORE**, for the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 22) is **DENIED** in its entirety.

**SO ORDERED.**

Signed: July 13, 2015

Graham C. Mullen
United States District Judge